## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA
## PITTSBURGH DIVISION

| | |
|---|---|
| JOSHUA LEGGETT, Individually and For Others Similarly Situated | **Case No.** _____ 23-882 |
| v. | Jury Trial Demanded |
| WEST VIRGINIA UNIVERSITY MEDICAL CORPORATION | Rule 23 Class Action |

## ORIGINAL CLASS ACTION COMPLAINT

### SUMMARY

1.      Joshua Leggett (Leggett) brings this class action to recover unpaid wages and other damages from West Virginia University Medical Corporation (WVUM).

2.      Leggett works for WVUM as a Financial Access Registration Associate at WVUM's facility in Uniontown, Pennsylvania.

3.      Like the Putative Class Members (as defined below), Leggett regularly worked more than 40 hours in a workweek.

4.      But WVUM does not pay them for all the hours they work.

5.      Instead, WVUM automatically deducts 30 minutes a day from these employees' work time for so-called meal breaks.

6.      Leggett and the Putative Class Members are thus not paid for that time.

7.      WVUM fails to provide Leggett and the Putative Class Members with *bona fide* meal breaks.

8.      Instead, WVUM requires Leggett and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions during their unpaid "meal breaks."

1

9. WVUM's auto-deduction policy violates the Pennsylvania Minimum Wage Act, 43 PA. STAT. § 333.101, *et seq.* (PMWA) and Pennsylvania Wage Payment and Collection Law, 43 PA. STAT. § 260.1, *et seq.* (WPCL) by depriving Leggett and the Putative Class Members of wages, including overtime pay, for all hours worked, including those worked in excess of 40 hours in a workweek.

10. Further, in addition to excluding time Leggett and the Putative Class Members worked during their unpaid "meal breaks," WVUM also uniformly rounds these employees' recorded time punches to the nearest 11-minute increment to WVUM's – not these employees' – predominant benefit.

11. WVUM's uniform rounding policy violates the PMWA and WPCL by depriving Leggett and the Putative Class Members of wages, including overtime pay, for all hours worked, including those worked in excess of 40 hours in a workweek, because WVUM fails to include all work time in these employees' total hours worked.

12. Finally, in addition to failing to pay Leggett and the Putative Class Members for all hours worked, WVUM also paid these employees different hourly rates (or "shift differentials") and/or bonuses depending on what type of shifts they worked.

13. But WVUM failed to include these shift differentials and bonuses in calculating Leggett's and the Putative Class Members' regular rates of pay for overtime purposes.

14. WVUM's shift differential and bonus pay scheme violates the PMWA and WPCL by depriving Leggett and the Putative Class Members of overtime wages at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

## JURISDICTION & VENUE

15. This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA).

16.     Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of one member of Leggett's Putative Classes and WVUM are citizens of different states; and (c) Leggett's Putative Classes exceed 100 members.

17.     This Court has specific personal jurisdiction over WVUM with respect to this action because WVUM employed Leggett and the Putative Class Members in Pennsylvania.

18.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

19.     Specifically, Leggett and the Putative Class Member worked for WVUM in Uniontown, Pennsylvania, which is in this District and Division.

**PARTIES**

20.     Leggett has worked for WVUM as a Financial Access Registration Associate at WVUM's facility in Uniontown, Pennsylvania since approximately July 2022.

21.     Throughout his employment, WVUM classified Leggett as non-exempt and paid him on an hourly basis.

22.     Throughout his employment, WVUM subjected Leggett to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks."

23.     But through his employment, Leggett often did not receive *bona fide* meal breaks.

24.     Further, throughout his employment, WVUM automatically rounded his recorded time punches to the nearest 11-minute increment to WVUM's – not Leggett's – predominant benefit.

25.     Finally, throughout his employment, paid Leggett under its shift differential and bonus pay scheme, paying him different hourly rates and/or bonuses depending on what type of shift he worked.

26.     But WVUM failed to include these shift differentials and bonuses in calculating Leggett's regular rate of pay for overtime purposes.

27.     Leggett brings this action on behalf of himself and other similarly situated hourly, non-exempt WVUM employees who worked at WVUM's facility in Uniontown, Pennsylvania who (1) were subject to WVUM's automatic meal break deduction policy, (2) were subject to WVUM's automatic rounding policy, and/or (3) were paid under WVUM's shift differential and bonus pay scheme.

28.     WVUM automatically deducts 30 minutes from these employees' recorded work time for so-called "meal breaks."

29.     But WVUM often requires these employees to remain on-duty and perform work throughout their shifts, including during their unpaid "meal breaks."

30.     Further, WVUM automatically rounds these employees' recorded time punches to the nearest 11-minute increment for WVUM's – not these employees' – predominant benefit.

31.     Finally, WVUM uniformly pays these employees shift differentials and/or bonuses that WVUM fails to include in calculating their regular rates of pay for overtime purposes.

32.     Thus, WVUM uniformly deprives these employees of wages (including overtime compensation at the proper premium rate based on *all* renumeration received) for all hours worked, including those in excess of 40 hours in a workweek, in violation of the PMWA and/or WPCL.

33.     The Putative Classes of similarly situated employees are defined as:

**All hourly, non-exempt employees working for, or on behalf of WVUM at Uniontown Hospital who received an automatic meal period deduction while working in Pennsylvania at any time during the past 3 years ("Putative Meal Break Class Members" or "Putative Meal Break Class");**

**All hourly, non-exempt employees working for, or on behalf of WVUM at Uniontown Hospital who were subject to WVUM's automatic rounding policy while working in Pennsylvania at any time during the past 3 years ("Putative Rounding Class Members" or "Putative Rounding Class"); and**

**All hourly, non-exempt employees working for, or on behalf of WVUM at Uniontown Hospital who received shift differentials and/or bonuses while working in Pennsylvania at any time during the past 3 years ("Putative Shift Diff Class Members" or "Putative Shift Diff Class").**

34.    The Putative Meal Break Class Members, the Putative Rounding Class Members, and the Putative Shift Diff Class Members are collectively referred to as the "Putative Class Members" or "Putative Classes."

35.    WVUM is a West Virginia corporation that maintains its principal office and registered office in Morgantown, West Virginia.

36.    WVUM owns and/or operates the Uniontown Hospital in Uniontown, Pennsylvania.

37.    WVUM may be served with process by serving its officers, directors, managing agents, or general agents at its registered office: **1 Medical Center Drive, Morgantown, West Virginia 26506**.

FACTS

38.    WVUM bills itself as West Virginia's "largest health system and largest private employer … comprised of 20 hospitals" across West Virginia, Pennsylvania, Ohio, and Maryland.[1]

39.    WVUM employs workers, including Leggett and the Putative Class Members, to work at its facility in Uniontown, Pennsylvania, Uniontown Hospital.

40.    WVUM uniformly classifies these employees as non-exempt and pays them on an hourly basis.

41.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

---

[1] *See* https://wvumedicine.org/about/(last visited May 25, 2023).

42.     For example, Leggett has worked for WVUM as a Financial Access Registration Associate at WVUM's facility in Uniontown, Pennsylvania since approximately July 2022.

43.     As a Financial Access Registration Associate, Leggett's primary responsibilities included checking patients in, registering patients, obtaining patient insurance information as well as demographics, working the front desk of the nursing floor as well as patient rooms and emergency rooms, and generally assisting with patient intake.

44.     Throughout his employment, WVUM classified Leggett as non-exempt and paid him on an hourly basis.

45.     Throughout his employment, WVUM subjected Leggett to its common practice of automatically deducting 30 minutes from his recorded hours worked and wages each shift for meal breaks, regardless of whether he actually received a *bona fide* meal break.

46.     Throughout his employment, WVUM subjected Leggett to its common practice of automatically rounding his recorded time punches to the nearest 11-minute increment to WVUM's – not Leggett's – predominant benefit.

47.     Throughout his employment, WVUM paid Leggett under its shift differential and bonus pay scheme, paying him different hourly rates and/or bonuses depending on what type of shift he worked, which WVUM failed to include in calculating his regular rate of pay for overtime purposes.

48.     Leggett and the Putative Class Members perform their jobs under WVUM's supervision and use materials, equipment, and technology approved and supplied by WVUM.

49.     WVUM requires Leggett and the Putative Class Members to follow and abide by common work, time, pay, meal break, and overtime policies and procedures in the performance of their jobs.

6

50. At the end of each pay period, Leggett and the Putative Class Members receive wages from WVUM that are determined by common systems and methods that WVUM selects and controls.

51. WVUM requires its non-exempt employees, including Leggett and the Putative Class Members, to record their hours worked using WVUM's timeclock system.

52. Further, WVUM subjects its hourly, non-exempt employees, including Leggett and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

53. Specifically, WVUM automatically deducts 30 minutes from Leggett's and the Putative Class Members' time records each shift they work for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal period.

54. But WVUM fails to provide Leggett and the Putative Class Members with *bona fide* meal periods.

55. Instead, WVUM requires Leggett and the Putative Class Members to remain on-duty and working throughout their shifts and continuously subjects them to interruptions during their unpaid meal periods.

56. Indeed, because of these constant work interruptions, Leggett and the Putative Class Members are not free to engage in personal activities during their unpaid meal periods.

57. Rather, during their unpaid "meal breaks," Leggett and the Putative Class Members are forced to substantially perform their regular job duties and responsibilities.

58. Thus, Leggett and the Putative Class Members routinely spend their unpaid "meal breaks" performing work for WVUM's – not these employees' – predominant benefit.

59. This unpaid time is compensable under the PMWA and WPCL because WVUM knew, or should have known, that (1) Leggett and the Putative Class Members were performing unpaid work

7

during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they were not completely relieved of all duties during their "meal breaks," (4) they entirely skipped the meal period due to work demands, (5) the meal period was less than 30 consecutive minutes, (6) they were not free to engage in personal activities during their meal periods because of constant interruptions, (7) they remained on WVUM's premises, and/or (8) they predominantly spent their unpaid meal periods performing their regular job duties for WVUM's predominant benefit..

60.     The unpaid time is also compensable under the WPCL because WVUM agreed to pay Leggett and the Putative Class Members set rates of pay (including "straight time" and overtime wages) for all time they worked, and WVUM failed to pay these employees all their earned wages for all hours worked.

61.     WVUM failed to exercise its duty to ensure Leggett and the Putative Class Members were not performing work that WVUM did not want performed during their unpaid "meal breaks."

62.     Despite accepting the benefits, WVUM did not pay Leggett and the Putative Class Members for the compensable work they performed during their "meal breaks."

63.     WVUM knows Leggett and the Putative Class Members routinely perform work "off the clock" during their unpaid "meal breaks" because WVUM expects and requires these employees to do so.

64.     But WVUM does not pay Leggett and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the PMWA and WPCL.

65.     Thus, under WVUM's uniform automatic meal break deduction policy, Leggett and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they work in excess of 40 hours in violation of the PMWA and WPCL.

66.     Likewise, under WVUM's uniform automatic meal break deduction policy, Leggett and the Putative Class Members are denied all wages earned (including "straight time" and overtime wages) at their agreed rates for those on-duty "meal breaks" in violation of the WPCL.

67.     Similarly, WVUM also subjects Leggett and the Putative Class Members to its uniform policy of automatically rounding these employees' recorded time punches to the nearest 11-minute increment to WVUM's – not these employees' – predominant benefit.

68.     WVUM's uniform rounding policy violates the PMWA and WPCL by depriving Leggett and the Putative Class Members of overtime pay for all overtime hours worked because WVUM fails to include all work time in these employees' total hours worked.

69.     Likewise, WVUM's uniform rounding policy violates the WPCL by depriving Leggett and the Putative Class Members of all wages earned (including "straight time" and overtime wages) at their agreed rates for all hours worked because WVUM fails to include all work time in these employees' total hours worked.

70.     Finally, in addition to excluding time Leggett and the Putative Class Members work, WVUM also uniformly pays these employees shift differentials and/or bonuses depending on what type of shifts they work.

71.     But WVUM fails to include these shift differentials and bonuses in calculating Leggett's and the Putative Class Members' regular rates of pay for overtime purposes.

72.     WVUM's shift differential and bonus pay scheme violates the PMWA and/or WPCL, by failing to pay Leggett and the Putative Class Members overtime at rates not less than 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked.

73.     Leggett worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

74.     For example, during the workweek ending on October 1, 2022, Leggett worked over 100 hours.

75.     Likewise, each Putative Class Members worked more than 40 hours in at least one workweek during the 3 years before this Complaint was filed.

76.     Indeed, Leggett and the Putative Class Members typically work 8 hours a day for up to 7 days a week.

77.     And Leggett and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" to complete their job duties and responsibilities.

78.     As a result, Leggett and the Putative Class Members routinely work in excess of 40 hours in a typical workweek.

79.     When Leggett and the Putative Class Members work more than 40 hours in a workweek, WVUM does not pay them overtime wages at 1.5 times their regular rates of pay – based on *all* renumeration received – for all overtime hours worked because (1) WVUM fails to include time these employees work during their unpaid meal breaks in their total number of hours worked in a given workweek; (2) WVUM automatically rounds these employees' recorded time punches; and/or (3) WVUM fails to include these employees' shift differentials and bonuses in calculating their regular rates of pay for overtime purposes.

80.     Likewise, when Leggett and the Putative Class Members work fewer than 40 hours in a workweek, WVUM does not pay them all their "straight time" wages (at their agreed hourly rates) for all hours worked because WVUM fails to include time these employees work during their unpaid meal breaks in their total number of hours worked in a given workweek and/or WVUM automatically rounds these employees' recorded time punches.

81.     WVUM owns and/or operates Uniontown Hospital, where Leggett and the Putative Class Members work.

82.     WVUM controls and dictates Leggett's and the Putative Class Members' rates and methods of pay.

83.     WVUM maintains control, oversight, and direction over Leggett and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages (including overtime compensation), meal breaks, performance standards, and other employment policies.

84.     WVUM maintains control, oversight, and direction of Leggett and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, and other employment practices.

85.     Indeed, WVUM dictates the hiring standards and all other employment policies and practices in place at Uniontown Hospital, where Leggett and the Putative Class Members work.

86.     WVUM has the authority to hire, fire, and discipline the employees working at Uniontown Hospital, including Leggett and the Putative Class Members.

87.     WVUM controls Leggett's and the Putative Class Members' schedules and assignments.

88.     WVUM controls Leggett's and the Putative Class Members' work.

89.     WVUM requires Leggett and the Putative Class Members to follow WVUM's policies, procedures, and specifications.

90.     Leggett's and the Putative Class Members' work must strictly adhere to the quality standards put in place by WVUM.

91.     WVUM prohibits Leggett and the Putative Class Members from varying their job duties outside WVUM's guidelines and expectations and requires these employees to follow all WVUM policies, procedures, and directives.

92.     WVUM's facilities, including Uniontown Hospital, have centralized ownership, management, and/or a human resources department.

93.     Without the job performed by Leggett and the Putative Class Members, WVUM would not be able to complete its business objectives of operating healthcare facilities, including Uniontown Hospital.

94.     Leggett and the Putative Class Members rely on WVUM for work and compensation.

95.     Leggett and the Putative Class Members do not substantially invest in the tools, materials, and equipment necessary to complete their job duties.

96.     Rather, WVUM incurred the large-scale business and operating expenses like payroll, marketing, healthcare facilities and hospitals, medical equipment and tools, etc. that the employees working at its various healthcare facilities, including Leggett and the Putative Class Members, need to perform their jobs.

97.     WVUM sets Leggett's and the Putative Class Members' work schedule, which inherently prohibits them from working other jobs while working for WVUM.

98.     WVUM maintains employment records for the employees working at Uniontown Hospital, including Leggett and the Putative Class Members.

99.     In sum, the employees that work at Uniontown Hospital, including Leggett and the Putative Class Members, are WVUM's employees.

## CLASS ACTION ALLEGATIONS

100.     Leggett brings his claims as a class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

101.     The Putative Class Members were uniformly victimized by (1) WVUM's automatic meal break deduction policy, (2) WVUM's automatic rounding policy, and/or (3) WVUM's shift differential and bonus pay scheme, which are in willful violation of the PMWA and WPCL.

102.     Other Putative Class Members worked with Leggett and indicated they were paid in the same manner, performed similar work, and were subject to WVUM's same illegal pay and timekeeping policies.

103.     Based on his experiences with WVUM, Leggett is aware WVUM's illegal practices were imposed on the Putative Class Members.

104.     Upon information and belief, the Putative Class Members are so numerous that joinder of all members is impracticable.

105.     While the exact number of Putative Class Members is unknown to Leggett at this time, it can be readily and easily ascertained from WVUM's business and personnel records through appropriate discovery.

106.     The Putative Class Members are similarly situated in all relevant respects.

107.     Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime pay.

108.     Therefore, the specific job titles or precise job locations of the various Putative Class Members do not prevent class treatment.

109.     Rather, the Putative Classes are held together by (1) WVUM's automatic meal break deduction policy, (2) WVUM automatic rounding policy, and/or (3) WVUM's shift differential and bonus pay scheme, both of which systematically deprived Leggett and the Putative Class Members of proper wages, including overtime pay.

110.     WVUM's failure to timely and properly pay these employees "straight time" and overtime wages at the rates required by the PMWA and/or WPCL results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

111.     The Putative Class Members are similarly denied "straight time" wages (at their agreed hourly rates) when they worked fewer than 40 hours in a workweek.

112.     The Putative Class Members are similarly denied overtime wages at the proper premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

113.     The back wages owed to Leggett and the Putative Class Members will be calculated using the same records and using the same formula.

114.     Leggett's experiences are therefore typical of the experiences of the Putative Class Members.

115.     Leggett has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class treatment.

116.     Like each Putative Class Member, Leggett has an interest in obtaining the unpaid wages owed under Pennsylvania law.

117.     A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

14

118.    Absent a class action, many Putative Class Members will not obtain redress for their injuries, and WVUM will reap the unjust benefits of violating the PMWA and WPCL.

119.    Further, even if some of the Putative Class Members could afford individual litigation against WVUM, it would be unduly burdensome to the judicial system.

120.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

121.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

122.    Among the common questions of law and fact are:

    a.    Whether WVUM engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the PMWA and/or WPCL;

    b.    Whether WVUM's automatic meal break deduction policy deprived Leggett and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the PMWA and/or WPCL;

    c.    Whether WVUM failed to pay Leggett and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the PMWA and/or WPCL;

    d.    Whether WVUM knew, or had reason to know, Leggett and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks in violation of the PMWA and/or WPCL;

e.  Whether WVUM engaged in a policy and practice of automatically rounding Leggett's and the Putative Class Members' recorded time punches in violation of the PMWA and/or WPCL;

f.  Whether WVUM's automatic rounding policy deprived Leggett and the Putative Class Members of pay for all hours worked in violation of the PMWA and/or WPCL;

g.  Whether WVUM failed to pay Leggett and the Putative Class Members all wages earned at their agreed rates for all hours worked in violation of the WPCL;

h.  Whether WVUM failed to include Leggett and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes in violation of the PMWA and/or WPCL;

i.  Whether WVUM's violations of the PMWA and/or WPCL resulted from a continuing course of conduct;

j.  Whether WVUM's decision not to pay Leggett and the Putative Class Members overtime wages at the proper rate for all overtime hours worked was made in good faith;

k.  Whether WVUM's decision not to pay Leggett and the Putative Class Members all wages earned at the rates WVUM agreed to pay them for all work performed was the result of a *bona fide* dispute; and

l.  Whether WVUM's violations of the PMWA and/or WPCL were willful.

123.  Leggett and the Putative Class Members sustained damages arising out of WVUM's illegal and uniform employment policies.

124.  Leggett knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

125.     Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to WVUM's records, and there is no detraction from the common nucleus of liability facts.

126.     Therefore, the issue of damages does not preclude class treatment.

127.     WVUM is liable under the WPCL for failing to pay Leggett and the Putative Class Members "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

128.     WVUM is liable under the PMWA and WPCL for failing to timely pay Leggett and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked when they worked more than 40 hours in a workweek.

129.     Consistent with WVUM's illegal automatic meal break deduction policy, Leggett and the Putative Class Members were not paid "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

130.     Consistent with WVUM's illegal automatic meal break deduction policy, Leggett and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

131.     Consistent with WVUM's illegal automatic rounding policy, Leggett and the Putative Class Members were not paid "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

132.     Consistent with WVUM's illegal automatic rounding policy, Leggett and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

133.    Consistent with WVUM's illegal shift differential and bonus pay scheme, Leggett and the Putative Class Members were not paid overtime compensation at the proper premium rate based on *all* renumeration received.

134.    As part of its regular business practices, WVUM intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the PMWA and WPCL with respect to Leggett and the Putative Class Members.

135.    WVUM's illegal policies deprived Leggett and the Putative Class Members of wages, including overtime compensation at the proper premium rate, which they are owed under Pennsylvania law.

### WVUM's PMWA and WPCL Violations Were Willful or Done in Reckless Disregard for the PMWA and WPCL

136.    Leggett realleges and incorporates all other paragraphs by reference.

137.    WVUM knew the that work at Uniontown Hospital, including Leggett and the Putative Class Members, are its employees.

138.    WVUM knew Leggett and the Putative Class Members are non-exempt employees entitled to overtime because WVUM uniformly classifies and pay them as such.

139.    WVUM knew Leggett and the Putative Class Members were its hourly employees.

140.    WVUM knew it was subject to the PMWA and WPCL, including their respective overtime provisions.

141.    WVUM knew the PMWA and WPCL requires it to pay employees, including Leggett and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay – based on *all* renumeration received – for all hours worked in excess of 40 hours in a workweek.

142.     WVUM knew the WPCL requires it to pay employees, including Leggett and the Putative Class Members, all wages earned, at the rates WVUM agreed to pay them, for all hours worked.

143.     WVUM knew it paid Leggett and the Putative Class Members shift differentials and/or bonuses depending on what types of shifts they worked.

144.     WVUM knew it was required to include Leggett's and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes.

145.     WVUM knew it excluded Leggett's and the Putative Class Members' shift differentials and bonuses in calculating these employees' regular rates of pay for overtime purposes.

146.     WVUM knew Leggett and the Putative Class Members worked more than 40 hours in a workweek because WVUM requires these employees to record their hours worked using its timeclock system.

147.     WVUM knew it automatically deducted 30 minutes/shift from Green and the Putative Class Members' work time for meal breaks.

148.     WVUM knew Leggett and the Putative Class Members regularly worked during their unpaid meal breaks because WVUM expects and requires them to do so.

149.     WVUM knew Leggett and the Putative Class Members regularly spend their meal breaks substantially performing their regular job duties for WVUM's predominant benefit.

150.     Indeed, Leggett and the Putative Class Members routinely complained to WVUM's management and their supervisors about being forced to work through their unpaid "meal breaks."

19

151.    WVUM knew that, as Leggett's and the Putative Class Members' employer, it has a duty to ensure these employees were not performing work that WVUM did not want performed during their unpaid "meal breaks."

152.    WVUM knew Leggett and the Putative Class Members performed compensable work during their unpaid meal breaks.

153.    Likewise, WVUM knew it automatically rounded Leggett's and the Putative Class Members' recorded time punches to WVUM's – not these employees' – predominant benefit.

154.    WVUM knew the PWMA required it to pay Leggett and the Putative Class Members for all hours these employees performed compensable work, including those hours worked during their unpaid "meal breaks."

155.    WVUM knew the WPCL required it to pay Leggett and the Putative Class Members all wages earned, at the rates WVUM agreed to pay them, for all hours worked, including those hours worked during their unpaid "meal breaks."

156.    WVUM knew it did not pay Leggett and the Putative Class Members for all hours these employees performed compensable work, including during their unpaid "meal breaks."

157.    Nonetheless, WVUM failed to pay Leggett and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked.

158.    WVUM's failure to pay Leggett and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

159.    WVUM knowingly, willfully, and/or in reckless disregard carried out these illegal policies that deprived Leggett and the Putative Class Members of wages, including overtime

compensation at the proper premium rate, for all overtime hours worked in violation of the PMWA and WPCL.

160. Indeed, WVUM has been sued before for failing to pay employees for all hours worked, including those hours worked during their unpaid "meal breaks." *See, e.g., Ware v. West Virginia University Medical Corporation*, No. 1:22-CV-00054 (N.D.W.Va.).

<u>COUNT I</u>

**FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA**

161. Leggett realleges and incorporates all other paragraphs by reference.

162. Leggett brings his PMWA claims as class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

163. The conduct alleged violates the PMWA, 43 PA. STAT. § 333.101, *et seq.*

164. At all relevant times, WVUM was subject to the requirements of the PMWA because WVUM is an "employer" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(g).

165. At all relevant times, WVUM employed Leggett and the Putative Class Members as "employees" covered by the PMWA's protections. *See* 43 PA. STAT. § 333.103(h).

166. WVUM's uniform compensation schemes imposed on Leggett and the Putative Class Members failed to comply with 43 PA. STAT. § 333.104(c) and/or 34 PA. CODE § 231.43(b).

167. Section 333.104(c) of the PMWA requires employers, like WVUM, to pay employees, like Leggett and the Putative Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek. 43 PA. STAT. § 333.104(c).

168. WVUM violated, and is violating, the PMWA by failing to pay Leggett and the Putative Class Members overtime wages (at the proper premium rate based on all renumeration received) for

all hours worked in excess of 40 hours in a workweek, including time these employees work during their unpaid "meal breaks." *See* 43 PA. STAT. § 333.104(c).

169.    Leggett and the Putative Class Members have been harmed as a direct and proximate result of WVUM's unlawful conduct because they have been deprived of wages owed for work that they performed and from which WVUM derived a direct and substantial benefit.

170.    WVUM knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Leggett and the Putative Class Members premium overtime compensation for all overtime hours worked.

171.    WVUM's failure to pay Leggett and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime compensation at the proper premium rate for all overtime hours worked made in good faith.

172.    WVUM has acted willfully and has engaged in a continuing violation of the PMWA with respect to Leggett and the Putative Class Members.

173.    Accordingly, Leggett and the Putative Class Members are entitled to recover their unpaid overtime in amount equal to 1.5 times the regular rate of pay for all hours worked in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, as well as attorney's fees, costs, and expenses of this action, as provided by the PMWA. *See* 43 PA. STAT. § 333.113.

<u>COUNT II</u>

FAILURE TO PAY ALL WAGES EARNED UNDER THE WPCL

174.    Leggett realleges and incorporates all other paragraphs by reference.

175.    Leggett brings his WPCL claims as class action on behalf of himself and the Putative Class Members pursuant to FED. R. CIV. P. 23.

176.    The conduct alleged violates the WPCL, 43 PA. STAT. § 260.1, *et seq.*

177.    At all relevant times, WVUM was an "employer" within the meaning of, and subject to the requirements of, the WPCL. *See* 43 PA. STAT. § 260.2a.

178.    At all relevant times, WVUM employed Leggett and the Putative Class Members as "employees" within the meaning of the WPCL.

179.    The WPCL requires employers, like WVUM, to pay employees, like Leggett and the Putative Class Members, all wages (including "straight time" and overtime wages) earned, due, and owing to them on their regular payday. 43 PA. STAT. § 260.3(a).

180.    During the course of their employment, WVUM agreed to pay Leggett and each Putative Class Members an hourly rate for all hours they worked under and up to 40 hours in a workweek, as well as overtime rates for all hours they worked in excess of 40 hours in a workweek.

181.    Leggett and each Putative Class Members accepted WVUM's offer.

182.    But during the course of their employment, WVUM failed to pay Leggett and the Putative Class Members for all time they worked at the rates WVUM agreed to pay them because (1) WVUM automatically deducted 30 minutes/shift for meal breaks, and/or (2) WVUM failed to include these employees' shift differentials and bonuses in calculating their regular rate of pay for overtime purposes.

183.    As a result of WVUM illegal automatic meal break deduction policy and WVUM's shift differential and bonus pay scheme, WVUM deprived Leggett and the Putative Class Members have of all wages earned, due, and owing to them. *See* 43 PA. STAT. § 260.3(a).

184.    Leggett and the Putative Class Members have been harmed as a direct and proximate result of WVUM's unlawful conduct because they have been deprived of wages owed for work that they performed and from which WVUM derived a direct and substantial benefit.

185.   WVUM knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Leggett and the Putative Class Members all "straight time" and overtime wages earned, at the rates WVUM agreed to pay them, for all hours worked.

186.   WVUM's failure to pay Leggett and the Putative Class Members all wages earned at the rates WVUM agreed to pay them for all hours worked was neither reasonable, nor was the decision not to pay these employees all wages earned at the rates WVUM agreed to pay them for all hours worked made in good faith.

187.   WVUM's failure to pay Leggett and the Putative Class Members all wages earned at the rates WVUM agreed to pay them for all hours worked was not the result of a *bona fide* dispute.

188.   WVUM has acted willfully and has engaged in a continuing violation of the WPCL with respect to Leggett and the Putative Class Members.

189.   Accordingly, Leggett and the Putative Class Members are entitled to recover their unpaid "straight time" and overtime wages, plus liquidated damages, and attorney's fees and costs, as provided by the WPCL. *See* 43 PA. STAT. § 260.9a.

### JURY DEMAND

190.   Leggett demands a trial by jury.

### RELIEF SOUGHT

WHEREFORE, Leggett, individually and on behalf of the Putative Class Members, seeks the following relief:

i.   An Order designating this action as a class action pursuant to FED. R. CIV. P. 23;

ii.   An Order appointing Leggett and his counsel to represent the interests of the Putative Classes;

b.   An Order finding WVUM liable to Leggett and the Putative Class Members for unpaid overtime wages owed under the PMWA, as well as for all available penalties;

24

c.    An Order finding WVUM liable to Leggett and the Putative Class Members for unpaid "straight time" and overtime wages owed under the WPCL, as well as for liquidated damages;

d.    An Order awarding Leggett and the Putative Class Members an additional 25% penalty under the WPCL;

e.    A Judgment awarding Leggett and the Putative Class Members all unpaid wages, penalties, and other damages available under the PMWA and WPCL;

f.    An Order awarding attorney's fees, costs, and expenses;

g.    An Order awarding pre- and post-judgment interest at the highest applicable rates; and

h.    An Order awarding such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: /s/ Michael A. Josephson
Michael A. Josephson
PA ID:308410
**Andrew W. Dunlap**
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
Austin W. Anderson*
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

Joshua P. Geist
PA ID: 85745
**GOODRICH & GEIST PC**
3634 California Ave.
Pittsburgh, Pennsylvania 15212
Tel: (412) 766-1455
Fax: (412) 766-0300
josh@goodrichandgeist.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**